Wayne D. Carroll, (Bar No. #024120)
The Carroll Law Firm PLC
42104 N. Venture Court, Suite E-101
Anthem, AZ 85086
P. (623)551-9366; F. (623) 551-7970
Copyright@AnthemLawFirm.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA - PHOENIX

| | |
|---|---|
| DIGITAL SIN, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1 – 187, <br><br> Defendants. | Case No.: CV-12-0094-PHX-NVW <br><br><br> **PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE** <br><br><br> (Related to Document 6) <br><br> Judge: Honorable Neil V. Wake |

Plaintiff hereby responds to the Court's January 27, 2012 Order to Show Cause (Doc. #6). This Court asked Plaintiff to explain "why all Defendants past Doe 1 should not be dismissed from this action for failure to meet the permissive joinder standard of Fed. R. Civ. 20(a)(2)." (In communications with the Court subsequent to the Order, Plaintiff suggested that the issue of a Doe Defendants' ability to proceed anonymously be discussed. The Court instructed Plaintiff to discuss only the joinder issue at this time.)

Joinder of defendants is proper here because all Does (i) acted cooperatively with each other, all joining the same swarm to engage in copying, as shown by the identical hash mark (comparable to a digital fingerprint) for the swarm shown in Exhibit A to the Complaint; and (ii) traded the exact same movie during a limited time period, as shown in Exhibit A to the Complaint. Here, the claims against all Defendants arise from the same series of transactions or occurrences, and the claims against all defendants have common questions of law and fact that will arise in this action.

Plaintiff's counsel believes that the issue of joinder in a mass copyright case is a matter of first impression for the District of Arizona. Cases from other districts differ on joinder, sometimes even cases within the same district. In general, cases that decline to uphold joinder are distinguishable from the instant case. Plaintiff suggests that some judges that have declined to permit joinder, particularly during the discovery phase of litigation, may themselves be affected by the mindset shared by many people —

> *If something is on the Internet, then it just must be available for free to all, and anyone trying to enforce copyrights is really, at bottom, just a [insert a derogatory term of your choice here, e.g., troll, parasite, The Man, copyright Nazi, to emotionally justify stealing from the true victim, namely the copyright owner].*

Plaintiff suggests that those judges have lost sight of the fact that the ease with which stealing is done does not mean that barriers should be erected to block an aggrieved party from obtaining justice under the law. Just the opposite should be occurring. Bill Maher of HBO's *Real Time With Bill Maher*, who suffered loss when illegal copies of his 2008 movie *Religulous* were downloaded online, noted (emphasis added):

> "Somebody has to bring up that there is a moral dimension to this, that this isn't brought up enough. People just want to steal because they can. I call it Caucasian

1

looting.  **And just because you're sitting at your computer in your pajama bottoms doesn't mean you're not stealing**."

See, http://www.rawstory.com/rs/2012/01/21/maher-supports-sopa-calls-piracy-caucasian-looting/

(last accessed by Plaintiff's counsel on February 14, 2012).

## I. FACTUAL BACKGROUND

To understand the Plaintiff's assertion that joinder is proper in this case, it is necessary to understand the technical details of how the copyright infringement occurred. At this stage of the litigation, in determining the issue of joinder, the court should construe all facts and inferences in the light most favorable to Plaintiff, and accept the Plaintiff's claims as true.

In this case all Doe Defendants joined the same BitTorrent Peer-to-Peer (P2P) network to download the same copyrighted motion picture.  In a BitTorrent Network there are separate file exchanges established for copying.  Each separate file exchange is referred to as a "swarm," and can be identified by a "hash" that is the same on every copy of a file (called a torrent) that is necessary to join the swarm.

A swarm is started by one user or peer making a file available for copying, this is called a seed file.  When another peer requests a copy of the file it is transferred from the first peer to the second peer.  When both peers are online and a third peer requests the file, then both the first and second peer upload parts of the file to the third peer.  As this continues there may be many different peers with a copy of the file available for uploading and many different peers will each upload a small portion of the file to one new peer who requests the file, so that the new peer obtains the whole file in many different parts from many different peers.  Also, a peer does not need to have the entire file before that peer can participate in uploading.

The BitTorrent protocol is designed so that once a portion of the file is downloaded, that portion of the file is available for uploading to other peers, and uploading of one part of the file can take place at the same time that downloading of the remainder of the file is taking place.  Once a peer has completed downloading a file, the peer has typically uploaded a portion of the file to another peer.

2

Usually a peer remains online and makes the file available for uploading after downloading the complete file because BitTorrent protocols have a policy, called a "tit-for-tat" policy, that encourages peers to upload at least as much as they download. This policy rewards peers with higher ratios of uploads to downloads with higher speeds for future downloads, and may punish users that do not upload enough by blocking their access to a network. The swarm continues as long as there is someone offering the file that was copied from the original seed file.

The BitTorrent protocol is popular because it overcomes a problem of other P2P systems, mainly, the slow upload speed of most internet connections. If a large file is transferred directly from one peer to another peer in the manner of the first P2P networks such as Napster, then the limiting factor is usually the upload speed of the peer delivering the file. BitTorrent overcomes this by allowing one peer to download from multiple peers at the same time. This works more efficiently when there are multiple peers available with a copy of the file, or the portion of the file that is needed.

In this case each Defendant was observed uploading a portion of the file that had the same hash, and therefore all of the Defendants copied a file that originated from the same seed file. This is evidence that all of the Defendants participated the same swarm. Each of the Doe Defendants either uploaded portions of the file directly to other Doe Defendants or to other users who in turn uploaded the file to other Doe Defendants. Here, the Doe Defendants, all believed to be residents of Arizona, were all observed having and uploading the copyrighted movie with a hash (used to identify the torrent of the exact same file) at various times from September 1, 2011 to December 2, 2011.

## II. LEGAL STANDARD

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides,

> Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. *Fed. R. Civ. P. 20(a)(2)*.

3

Joinder under Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997); *see also, Patrick Collins, Inc. v. Does 1-2,590,* 2011 U.S. Dist. LEXIS 94886, at *12-*22 (N.D. Cal. As amended September 22, 2011). The United States Supreme Court stated: "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; **joinder of claims, parties and remedies is strongly encouraged**." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2D 218 (1966). (Emphasis added.)

The requirement of part (B) is clearly met here. That is, there are **both** questions of law and fact that are common to all Doe Defendants, such as the validity of the copyright and whether the accused copies are in fact infringing.

So, what is the meaning of the Rule 20 requirement that the right to relief from defendants arise out of the same series of transactions or occurrences? We first have to determine what qualifies as a series of transactions or occurrences. In *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332-1333 (8th Cir. Mo. 1974), the court noted that permitting joinder is a matter of discretion, and yet reversed the trial court for its refusing to allow joinder.

> "Additionally, Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice. In this manner, the scope of the civil action is made a matter for the discretion of the district court, and a determination on the question of joinder of parties will be reversed on appeal only upon a showing of abuse of that discretion. *Chicago, R.I. & P.R.R. v. Williams*, 245 F.2d 397, 404 (8th Cir.), cert. denied, 335 U.S. 855, 78 S. Ct. 83, 2 L. Ed. 2d 63 (1957). To determine whether the district court's order was proper herein, we must look to the policy and law that have developed around the operation of Rule 20.
> "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. 7 C. Wright, Federal Practice And Procedure § 1652 at 265 (1972). Single trials generally tend to lessen the delay, expense and inconvenience to all concerned. Reflecting this policy, the Supreme Court has said:
>> 'Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'
> *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966).
> "Permissive joinder is not, however, applicable in all cases. The rule imposes

4

two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action.

> "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. 7 C. Wright, *Federal Practice And Procedure* § 1653 at 270 (1972). No hard and fast rules have been established under the rule. However, construction of the terms "transaction or occurrence" as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test. For the purposes of the latter rule,
>> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.
>
> *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367 (1926). Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. 7 C. Wright, Federal Practice And Procedure § 1653 at 270 (1972). The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. **Absolute identity of all events is unnecessary**."

In the instant case, we do have a series of many occurrences that are logically related. All the Doe Defendants engaged in the same swarm to make copies of the same file. Even if some defendants later assert defenses different from others, the series of transactions or occurrences as alleged in the Complaint are still logically related. And, absolute identity of events is not necessary. This is confirmed by the second requirement of Rule 20(a), namely, that "any question of law or fact common to all defendants will arise in the action." So, while there can be no dispute that there is at least one questions of law or fact common to all defendants, and likely common questions of both law and fact common to all (e.g., the validity of the copyright, whether the accused copies are in fact infringing), it is also clear from the second requirement that, as long as there is one question of law and fact in common, there may be differences, too.

Other District courts have addressed joinder in mass copyright infringement cases. *See, e.g., Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 342-32 (D.D.C. 2011) (finding joinder proper in a similar case involving over 1,000 Doe Defendants); *Donkeyball Movie, LLC v. Does 1-171*, Civ. No. 10-1520(BAH), 2011 WL 1807452, at *4-*5 (D.D.C. May 12, 2011) (same); *West Coast Prod., Inc. v. Does 1-5829*, Civ. No. 11-57(CKK), 2011 WL 2292239, at *5-*6 (D.D.C. Jun. 10, 2011) (same).

5

In *Patrick Collins, Inc. v. Does 1-2,590*, 2011 U.S. Dist. LEXIS 94886, at *13-*18 (N.D. Cal. As amended September 22, 2011), the Northern District of California held that it was proper to join 2,590 Doe Defendants in a similar case (the footnote added to the quoted information is for the Court's convenience) (emphasis added):

> "'The Ninth Circuit has interpreted the phrase "same transaction, occurrence, or series of transactions or occurrences" to require a degree of factual commonality underlying the claims.' *Bravado Int'l Group Merchandising Servs. v. Cha*, 2010 U.S. Dist. LEXIS 80361, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)[1] (citing Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party "must assert rights . . . that arise from related activities-a transaction or an occurrence or a series thereof." *Id.* (citation omitted). Recently, courts in this District - as well as several other federal districts — have come to varying decisions about the proprietary of joining multiple defendants in BitTorrent infringement cases. See *MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 85363, 2011 WL 3607666, at 3 (N.D. Cal. Aug. 3, 2011) (listing a sample of recent decisions). This Court has carefully reviewed such decisions and notes that they are highly dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these factors guide the Court's joinder analysis in this matter as well. Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly detailed explanation about how the BitTorrent protocol operates. *See* Nicolini Decl. ¶¶ 6, 7, 22. Mr. Nicolini explains:
> [quoting a declaration almost identical to the one in the instant case.] Nicolini Decl. ¶ 6. Based on this information, the Court finds that Plaintiff has at least presented a reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single swarm downloading or uploading a piece of the same seed file may fall within the definition of "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a)(1)(A).
> "Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary determination that the 2,590 Doe Defendants here were part of the same swarm. Reviewing Exhibit A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over nine months, from May 19, 2010 through June 2, 2011. *See* Compl, Ex. A. While this period might seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same within that

---

1  In *Bravado*, at *5 and *12-*14, the court ruled that different defendant groups in a chain of transactions were properly joined even thought the first group of defendants did not have dealings with the last group of defendants:

> "According to Plaintiff, these groups comprise a chain of distribution "from the OK Sportswear Group to the Maggi Fashion Group to the Clothing Island Group.
> ***
> ". . . Plaintiff explains that the groups in Tier One are part of the same chain of distribution. The OK Sportswear, Maggi Fashion, and Clothing Island Groups all sold shirts depicting Image No. 1, and counsel for the Clothing Island Group claimed that the Maggi Fashion Group supplied ClothingIsland.com with its infringing merchandise. * * * Therefore, Plaintiff's allegations of transactional-relatedness are sufficient . . . as to the groups in Tier One.
> ***
> ". . . [T]he groups in Tier One are properly joined in this action."

6

swarm. Nicolini Decl. ¶ 6. For each of the 2,590 Doe Defendants, Plaintiff has provided an identical hash. Compl, Ex. A. Based on these allegations, **Plaintiff's claims against the Doe Defendants appear logically related. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be responsible for distributing the work to the other putative Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.** See *Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is "flexible."). While the Doe Defendants may be able to rebut these allegations later, the plaintiffs have sufficiently alleged that their claims against the defendants potentially stem from the same transaction or occurrence, and are logically related. See *Arista Records LLC v. Does 1-19*, 551 F. Supp.2d 1, 11 (D.D.C.) ('While the Court notes that the remedy for improper joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct.'). Plaintiff has made a preliminary showing that these Defendants were present in the same [motion picture title] swarm on BitTorrent and shared pieces of the same seed file containing [motion picture title]."

The Court in *Patrick Collins v. Does 1-2,590*, at *19-*22, further determined that joinder of the Doe Defendants would likely promote judicial efficiency and benefit Defendants where Doe Defendants have not been named and the present focus of the case is identifying Doe Defendants through discovery.

"Finally, the Court assesses whether joinder would prejudice the parties or result in needless delay. Joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *Id.* [*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011).] at 344; *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

"Here, Plaintiff is currently obtaining identifying information from ISPs so that they can properly name and serve the defendants. If the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal file-sharers and this would only needlessly delay the case. Plaintiff would be forced to file 2,590 separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit its ability to protect its legal rights. 'This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action."' *Call of the Wild*, 770 F. Supp. 2d at 334 (citation omitted) (declining to sever defendants where parties joined promotes more efficient case management and discovery and no party prejudiced by joinder).

"Further, the Doe Defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to Plaintiff's allegations or assert a defense. The defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case against them, but they

cannot demonstrate any harm that is occurring to them before that time. *Id.*

"Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted material and seek redress from the Doe Defendants who have allegedly engaged in infringing activity. To be fair, the Court recognizes that the questions of joinder and severance must be deferred until after discovery has been authorized and any motions to quash filed. The Court is also cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers pro se. However, severing the putative defendants at this early stage is no solution to ease the administrative burden of the cases. The Court therefore declines to sever the Doe Defendants at this time."

Plaintiff itself has been the plaintiff in mass copyright cases in which the question of joinder was considered.

One of the cases, *Digital Sin, Inc., v. Does 1-5698*, Northern District of California Case No. CV 11-04397 LB, 2011 U.S. Dist. LEXIS 128033 (N.D. Cal., November 4, 2011), Plaintiff asserts was wrongly decided. It, like the two cases cited immediately above, is in the Northern District of California, but came down on the opposite side of the joinder issue. To illustrate where the two Northern District of California courts differed, the relevant portions of their opinions are shown side-by-side:

| *Digital Sin, Inc., v. Does 1-5698*, at *8-*9 (emphasis added) | *Patrick Collins v. Does 1-2,590*, at *16-*18 (emphasis added) |
|---|---|
| The court concludes here that Digital Sin fails to demonstrate that joinder is appropriate. Digital Sin argues that the Doe defendants are properly joined the Doe defendants downloaded and shared the same file (i.e., were a part of the same swarm) and the nature of the BitTorrent technology requires concerted action with regard to each swarm. Motion, ECF No. 3 at 15-23. **But, without more, permissive joinder is inappropriate, particularly given that 5,698 Doe defendants downloaded the protected work at various dates and times ranging from April to August 2011.** See generally Exh. A, ECF No. 1 . . . . | Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary determination that the 2,590 Doe Defendants here were part of the same swarm. **Reviewing Exhibit A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over nine months, from May 19, 2010 through June 2, 2011.** See Compl, Ex. A. While this period might seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same within that swarm. Nicolini Decl. ¶ 6. |

In the ruling by the court in *Digital Sin, Inc., v. Does 1-5698*, neither the phrase "logically related" nor anything similar appeared, and that court apparently concluded that a series of transactions or occurrences five months long could not be a "series of transactions or occurrences" as that phrase is used in Fed.R.Civ.P 20. On the other hand,

the court in *Patrick Collins v. Does 1-2,590* correctly used the "logically related" standard, and so recognized that a series of transactions or occurrences may occur even over the course of a nine month period.

Plaintiff asserts that it is an error for any court to dwell on the length of time that the swarm existed because of a concern that the first Doe must have handed off an illegal copy to the last Doe for them to have engaged in the same series of transactions or occurrences. There is no requirement in Rule. 20 that the joined defendants ever have dealt directly with each other, or stated another way, that one Doe had actually received portions of the infringing work from each and every one of the other Does. Further, Plaintiff is not merely alleging that the Doe defendants have infringed the same copyright. Plaintiff has alleged that they cooperated together in a single swarm. See, *Bravado* (discussed above in a footnote), and, see, *Square D Co. v. Pioneer Breaker & Supply Co.*, 2009 U.S. Dist. LEXIS 118496, at *28-*29 (W.D. Tex. Dec. 18, 2009), a trademark infringement case in which two sets of defendants who had not dealt with each other but had purchased counterfeit goods from the same source were held to be properly joined in the same action:

> "Plaintiff presents evidence the Pioneer Defendants purchased counterfeit Square D breakers from Miami Breaker. Plaintiff claims Pioneer and Toldy purchased and offered for sale at least 71 counterfeit circuit breakers obtained from Miami Breaker in 2005 or 2006. These breakers were inspected as part of Pioneer's inventory on December 11, 2007. Plaintiff presents evidence the breakers were determined to be counterfeit, and were determined to have been acquired from the same original sources as those purchased by the Gonzalez Defendants: GBP Distributors and Montelectric. See Rezac Depo. at 5-6, 9, 19-20, 22-26 and 55-56. The Court finds the foregoing allegations and evidence are sufficient to conclude the claims against all the Defendants in this case "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)."

In the instant case, just as in *Bravado* and *Square D*, all Doe Defendants engaged in the series of transactions or occurrences started by the same initial infringer.

Further, all the cases relied upon by the court in *Digital Sin, Inc., v. Does 1-5698,* are distinguishable, or in turn rely on cases that are distinguishable from the present case, namely, *Diabolic Video Prods. v. Does 1-2099*, No. C 10-5865 PSG, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011); *Pac. Century Int'l, Ltd. v. Doe*, No. C 11-02533 DMR, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. Jul. 8, 2011); and *IO Group, Inc. v. Does*

9

*1-435*, No. C 10-4382 SI, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011),  In *Pac. Century Int'l, Ltd. v. Doe,* No. C 11-02533 DMR, 2011 U.S. Dist. LEXIS 73837, at *7-*14 (N.D. Cal. Jul. 8, 2011), plaintiff failed to claim that the alleged infringers participated in the same swarm. ("Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm." *Id.*, at *12.)  In *IO Group, Inc. v. Does 1-435, No. C 10-4382 SI, 2011 U.S. Dist. LEXIS 1412 (N.D. Cal. Feb. 3, 2011)*, not only was there a failure to claim that a single swarm was involved, there were multiple movies involved. ("Looking closely at the factual allegations regarding the Doe defendants here, it becomes clear there is no basis to find the defendants were involved in the same transaction or series of transactions. Doe 1 is the only defendant alleged to have 'distributed' plaintiff's work 'Breakers.' Proposed FAC, ¶ 22. There is no allegation that any other Doe defendant distributed, viewed or downloaded 'Breakers.' The vast majority of Does are alleged to have 'distributed' different movies, on different days, at different times." *Id.*, at *12.)

While *Diabolic Video Prods. v. Does 1-2099*, No. C 10-5865 PSG, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011) is similar to the instant case, *Diabolic* was incorrectly decided because the cases it relied upon,  namely

> *BMG Music v. Does*,  No. C 06-01579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. Jul. 31, 2006);
> *Twentieth Century Fox Film Corp. v. Does 1–12*,  No. C 04-04862 WHA (N.D. Cal. Nov. 16, 2004);
> *LaFace Records, LLC v. Does 1-38*,  No. 5:07-cv-298, 2008 WL 544992, 2008 U.S. Dist. LEXIS 14544 (E.D. N.C. Feb. 27, 2008); and
> *Interscope Records v. Does 1-25*,  No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004),

were clearly distinguishable from the case there at hand.  **The plaintiffs in each of those case failed to contend that the Doe defendants acted in concert with each other.**

In *BMG Music v. Does*, 2006 U.S. Dist. LEXIS 53237, at *5-*6 Judge Marilyn Hall Patel explained the basis of her ruling and the ruling in the *Twentieth Century Fox* case (emphasis added):

> "The only connection between defendants noted by plaintiffs' papers is the fact that defendants allegedly used the same ISP, Covad Communications, to conduct the

10

>infringing acts. Mot. at 2. However, absent any allegation that these individuals acted in concert, there is no basis for joinder.
>
>"Numerous federal courts have found that joinder is improper when **there is no allegation that multiple defendants acted in concert**. See *Twentieth Century Fox Film Corp.* v. Does 1–12, No. C 04-04862 WHA (N.D. Cal. Nov. 16, 2004) (Alsup, J.) (severing multiple Doe defendants in a copyright infringement case where although defendants used the same ISP to allegedly infringe motion picture recordings, there was no allegation that the individuals acted in concert) . . . ."

In *LaFace Records* there were several plaintiffs enforcing several copyrights.

>"Plaintiffs are the alleged owners of the copyrights in numerous sound recordings made by artists who no longer control the copyrights at issue. * * * Attached to the complaint are charts showing * * * a list of copyrighted recordings downloaded by artist, song title, album title, and copyright holder." 2008 U.S. Dist. LEXIS 14544, at *2-*3.

The court in *LaFace Records*, based its ruling on this: "courts have commonly held that **where there is no assertion that multiple defendants have acted in concert, joinder is improper**." 2008 U.S. Dist. LEXIS 14544, at *7. (Emphasis added.)

In *Interscope Records v. Does 1-25*, there were SIXTEEN plaintiffs enforcing DOZENS of different copyrighted songs. Magistrate Judge Baker ruled that "the various Plaintiffs' claims against various Defendants are not logically related to each other." 2004 U.S. Dist. LEXIS 27782, at *6. This was based on the following facts: "None of the Defendants disseminated the same copyrighted material or songs belonging to the same set of Plaintiffs," 2004 U.S. Dist. LEXIS 27782, at *11, and "Sixteen unrelated Plaintiffs have joined twenty-five unrelated Defendants who independently copied different songs owned by different Plaintiffs." 2004 U.S. Dist. LEXIS 27782, at *15.

In the instant case, there is only a SINGLE plaintiff enforcing a SINGLE copyright. So, there is no issue of unrelated plaintiffs, or even of a plaintiff trying to enforce unrelated copyrights. And, all the Doe defendants are related to each other. The following allegation is in paragraph 22 of the Complaint,

>"Each Defendant has acted in cooperation with the other Defendants by agreeing to provide, and actually providing, on a P2P network an infringing reproduction of at least substantial portions of Plaintiff's copyrighted Motion Picture, in anticipation of the other Defendants doing likewise with respect to that work and/or other works."

This allegation is supported by the testimony in the Nicolini Declaration. As explained by Mr. Nicolini, the accused Doe Defendants act, and must act, cooperatively to

11

distribute unlawful copies of the copyrighted work, and "all the Doe defendants listed in **Exhibit A** joined the same swarm."  Nicolini Decl., pars. 7, 18, and 22.

While Plaintiff uses the phrase "in cooperation" as opposed to "in concert," those phrases are synonymous.  See, http://www.merriam-webster.com/dictionary/cooperate.

Plaintiff believes the real reason the court in that case, i.e., in the Northern District of California *Digital Sin, Inc., v. Does 1-5698*, case declined to uphold joinder was the court's concern regarding trial convenience and case management with over 5000 defendants in the case.

> "Joinder also fails to promote trial convenience and expedition of the ultimate determination of the substantive issues in this case. *See On The Cheap, LLC v. Does 1-5011, No. C10-4472 BZ, 2011 WL 4018258, at *2 (N.D. Cal. Sept. 6, 2011)*. Though the 5,698 Doe defendants may have engaged in similar behavior, they are likely to present different defenses. . . . Additionally, a court in this district found joinder inappropriate because of the case management issues involved in a case with thousands of defendants." *Id* at pg 5.

Plaintiff asserts that that court was short-sighted in this regard.  Litigation convenience (i.e., through initial discovery, even further discovery, and reduction of issues up to trial) would certainly be better served with one case rather than scores, or hundreds or thousands of separately-docketed cases.  At trial the case may be bifurcated by defendant and/or issue.

Of course, irony in this regard prevails in the judicial system.  In the Eastern District of California, a plaintiff very recently filed two mass copyright infringement cases, *Smash Pictures, Inc. v. Does 1-265*, Eastern District of California Case No. CV 12-00301-JAM-CKD, and *Smash Pictures, Inc. v. Does 1-590*, Eastern District of California Case No. CV 12-00302-GEB-GGH, both involving the same movie but different sets of doe defendants.  The court in the latter case did not challenge jurisdiction, instead last week the court required as follows:  "Plaintiff shall either **file a notice of related case document** in each potentially related case [i.e., cases 12-cv-301-JAM-CKD and 12-cv-302-GEB-GGH] or file a document in this action in which Plaintiff explains why this case is not related to the earlier filed action." *Id.* (Doc. # 4) (emphasis added).

12

As noted above, Plaintiff obtained a joinder ruling from another court, this one in favor of joinder. In the currently pending case, *Digital Sin, Inc. v. Does 1-176*, 2012 U.S. Dist. LEXIS 10803, at *14-15 (S.D.N.Y. Jan. 30, 2012), the court with knowledge of the Northern District of California *Digital Sin* case, **upheld** joinder (emphasis in original):

> "This Court is persuaded to adopt the standard articulated by Judge Crotty in *DigiProtect [USA Corp. v. Does 1-240*, 2011 U.S. Dist. LEXIS 109464(S.D.N.Y. Sept. 26, 2011)]. In particular, it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could ***not*** constitute a 'series of transactions or occurrences' for purposes of Rule 20(a). In the present case, Plaintiff has satisfied the *DigiProtect* standard by alleging that the Doe defendants were trading the exact same file as part of the same swarm. As a result, the Court declines to sever the case at this time."

The key to the analysis by the SDNY Court, as well as by many other courts upholding joinder, is that all of the defendants participated in the same swarm, and therefore all of the downloading activity was related.

Courts have used analogies to compare the digital world to non-digital world, so that the import of the technology can be better understood. Plaintiff would like to propose an analogy for the BitTorrent protocol and what transactions or occurrences might look like if similar copying were performed in the non-digital world.

BitTorrent technology can be compared to a hypothetical situation where a law student (let's call him or her the "first student") in a large law school class makes a copy of a textbook, and sends out a notice that there will be a textbook coping event in a certain room, in which stands a free photocopier, for anyone who wants a copy of the textbook. The first student would require, however, that anyone who receives a copy needs to make a copy for anyone else who comes to the room requesting a copy. If multiple people come to the room at the same time, and there are multiple photocopiers available for copying, a new student may receive different chapters of the book from different people in the room, but will end up with a complete copy of the text book. By this time the first student may have departed the room, but signs or other students will have passed instructions to the new student. The new student can start to fulfill the requirement of making a copy for someone else as soon as the new student has received a portion of the book, even a single

13

page of the book. Students may come and go from the room, but they all will have a copy that originated from the copy made by the first student from the original textbook, and they will all have participated in the same series of transactions or occurrences.

If the textbook in the above hypothetical were copyrighted, then it would be proper for a copyright holder to join multiple students who participated making copies in in a copyright infringement lawsuit because there would be a common question of law, namely copyright infringement of the textbook, and the claims would arise from the same series of transactions or occurrences, namely the continuous distribution of the textbook during the textbook copying event.

### III. ANALYSIS

**A. Same Transaction, Occurrence, or Series of Transactions or Occurrences**

In the instant case, Plaintiff alleges that each Defendant participated in the same "swarm" of BitTorrent users that illegally copied Plaintiff's copyrighted movie. *See Complaint* paras. 5, 9, 10, 11, 13. Each Doe Defendant participated in the same swarm, as identified by the "Hash Mark" which serves as a digital finger print. *Complaint* para. 11, *Exhibit B-Nicolini Declaration* para. 22. Plaintiff alleges that each Defendant cooperated with the other members of that swarm. *Complaint* paras. 10, 11; *Exhibit B-Nicolini Declaration* paras. 7, 22. Plaintiff further alleges that once a Defendant has downloaded even just a portion of the copyrighted work, the Defendant becomes an "additional seed" and distributes the copyrighted work to others in or joining the swarm. *Complaint* para. 10, *Exhibit B-Nicolini Declaration* paras. 6, 7.

Therefore, Plaintiff has sufficiently alleged that the Doe Defendants used the same file-sharing device at around the same time to copy the exact identical file of Plaintiff's Motion Picture. Furthermore, Plaintiff has alleged not only that each Doe played a role in the collaborative effort of distributing Plaintiff's movie, but that each of the Doe Defendants may have directly facilitated the download of Plaintiff's Motion Picture by another of the Doe Defendants. *Complaint* para. 11, 19; *Exhibit B-Nicolini Declaration* para. 6. *See Call of the Wild Movie*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) (finding

14

joinder proper where "[e]ach putative defendant is a possible source for the plaintiffs' motion pictures, and may be responsible for distributing the motion pictures to other putative defendants").

In a "swarm" copyright case, *Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011), Judge Howell distinguished cases that ordered severance, and noted that BitTorrent file sharing uses a "swarm" of infringers. In that case, the court denied motions to quash by several defendants. Judge Howell explained, at 2011 U.S. Dist. LEXIS 50787, at [*35]-[*39], as follows (emphasis added):

> "Some courts in other jurisdictions have granted motions by putative defendants for severance in analogous copyright infringement cases against unknown users of peer-to-peer file-sharing programs for failure to meet the 'same transaction or occurrence test' in Rule 20(a)(2). Those courts have been confronted with bare allegations that putative defendants used the same peer-to-peer network to infringe copyrighted works and found those allegations were insufficient for joinder. See, e.g., IO Grp., Inc. v. Does 1-19, No. 10-03851, 2010 WL 5071605, at *8-12 (N.D. Cal. Dec. 7, 2010); Arista Records, LLC v. Does 1-11, No. 07-cv-2828, 2008 WL 4823160, at *6 (N.D. Ohio Nov. 3, 2008) ('merely alleging that the Doe Defendants all used the same ISP and file-sharing network to conduct copyright infringement without asserting that they acted in concert was not enough to satisfy the same series of transactions requirement under the Federal Rules.'); LaFace Records, LLC v. Does 1-38, No. 5:07-cv-298, 2008 WL 544992, at *3 (E.D. N.C. Feb. 27, 2008) (severing putative defendants in file-sharing case not involving BitTorrent technology, noting that 'other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper.'); Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (adopting Mag. J. Report and Recommendation at Interscope Records v. Does 1-25, No. 6:04-cv-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004)). That is not the case here.
>  "The plaintiff has provided detailed allegations about how the BitTorrent technology differs from other peer-to-peer file-sharing programs and necessarily engages many users simultaneously or sequentially to operate. See Columbia Pictures Indus. v. Fung, No. 06-5578, 2009 U.S. Dist. LEXIS 122661, at *7 (C.D. Cal. Dec. 21, 2009) (***BitTorrent 'is unique from that of previous [P2P] systems such as Napster and Grokster. Rather than downloading a file from an individual user, [BitTorrent users download] from a number of host computers that possess the file simultaneously. . . . The BitTorrent client application simultaneously downloads the pieces of the content file from as many users as are available at the time of the request, and then reassembles the content file on the requesting computer when the download is complete. Once a user downloads a given content file, he also becomes a source for future requests and downloads.')***. Specifically, BitTorrent creates a 'swarm' in which 'each additional user becomes a part of the network from where the file can be downloaded . . . [U]nlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded the file that together comprises the whole.' Second Am. Compl., ¶ 3.
>  "At least one court has not been persuaded that allegations of copyright infringement by users of BitTorrent satisfy the requirement of Rule 20. See, e.g., Lightspeed v. Does 1-1000, No. 10-cv-5604, 2011 U.S. Dist. LEXIS 35392, at *4-7

15

(N.D. Ill. Mar. 31, 2011) (finding that Doe defendants using BitTorrent technology were misjoined on the basis that the putative defendants were not involved in the 'same transaction, occurrence, or series of transactions or occurrence' under FED. R. CIV. P. 20(a)(2)(A)); Millennium TGA Inc. v. Does 1-800, No. 10-cv-5603, 2011 U.S. Dist. LEXIS 35406, at *3-5 (N.D. Ill. Mar. 31, 2011) (same). In those cases, the court did not discuss the precise nature of the BitTorrent technology, which enables users to contribute to each other's infringing activity of the same work as part of a 'swarm.' In any event, by contrast to the instant claim of infringement of a single copyrighted work by the putative defendants, the plaintiffs in Lightspeed and Millennium TGA Inc. alleged infringement of multiple works, a factor that may undermine the requisite showing of concerted activity to support joinder."

Here, as in *Voltage Pictures*, Plaintiff alleges that the Doe Defendants have acted in cooperation with each other (i.e., in concert), and Plaintiff's expert, Jon Nicolini, so explained. *See Exhibit B to Complaint-Declaration of Jon Nicolini*, paras. 6 and 22. Thus, joinder is proper in this case, particularly at this early stage of litigation.

The BitTorrent protocol allow peers to come together over the Internet to copy a copyrighted movie. BitTorrent policies encourage peers to continue uploading the file after they have downloaded the complete file, and in this case all Doe Defendants were observed uploading the file. All Doe Defendants uploaded at least a portion of the exact same file, a copyrighted movie, in violation of Plaintiff's copyright. Each download and each upload are separate occurrences of copyright violation of the same copyright, and all of the infringements of copyright alleged in Plaintiff's Complaint occurred in a series of transactions or occurrences, in which all Doe Defendants cooperated, because they all came from the same BitTorrent "swarm."

### B. Question of Law or Fact Common to All Defendants

Federal Rule 20(a)(2)(B), requires that Plaintiff's claims against Defendants contain any common questions of law or fact. Plaintiff meets this requirement in the present case because it asserts identical claims against the Doe Defendants. Even though the Doe Defendants may possibly present different factual issues at a later stage in the litigation, the commonality of legal issues and facts supports joinder at least at this time.

### C. Prejudice to Any Party or Needless Delay

The interests of judicial efficiency weigh in favor of joining these claims, and doing so may also be beneficial for the Doe Defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (finding that consolidating a group of similar

cases "ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

The prejudice to the Plaintiff will be very high if joinder is not allowed at this stage of the litigation and each Defendant's identity must be discovered in a separate lawsuit. The Plaintiff will be required to file 187 separate cases, with separate filing fees. Further, to pursue these claims the Plaintiff will be required to file in each case: a Complaint; a motion for early discovery and proposed subpoena, a civil coversheet, and a corporate disclosure form.  All of these documents will be nearly identical except for the case number and will require considerable expense to the Plaintiff and considerable resources of this Court.  As the cases would be separate, any motions to quash subpoenas will be filed in separate cases with separate hearings.  This would necessarily result in delay and duplication of effort at this stage of the case where all the claims and facts are identical for all of the Defendants.

## IV. CONCLUSION

This Court should allow permissive joinder under Rule 20 of the Federal Rules of Civil Procedure because the claims against Defendants have a common question of law, namely copyright infringement of the same copyrighted work, and the infringement arises out of the same series of occurrences of copyright infringement, namely participation in the same BitTorrent swarm that occurred within about a two month period, from September 1, 2011 to December 2, 2011.  Finally, joinder of the Defendants is proper to promote judicial efficiency and economy as the delay and prejudice against the Plaintiff would be very high at this stage of the proceedings.  Otherwise, we are faced with the likelihood that Plaintiff would be forced to file hundreds of otherwise identical lawsuits in this District to protect Plaintiff's rights.  Therefore, Plaintiff respectfully asks this Court to allow joinder at this time.

Respectfully submitted this  
February 15, 2012.

By:  /s/ Wayne Carroll  
Wayne Carroll (AZ Bar ID 024120)  
ATTORNEY FOR PLAINTIFF